**ELTORON, INC., Appellant,**

v.

**ZONING HEARING BOARD OF the CITY OF ALIQUIPPA**

v.

**Jeanette Price and Flossie Gipson.**

**The City of Aliquippa.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1999.

Decided April 14, 1999.

Reargument Denied June 3, 1999.

Lawrence J. Casella, Pittsburgh, for appellant.

John Linkosky, Carnegie, for appellee, J. Price and F. Gipson.

C. Donald Gates, Jr., Pittsburgh, for City of Aliquippa.

Before COLINS, President Judge, FRIEDMAN, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

Eltoron, Inc. (Eltoron) appeals from an order of the Court of Common Pleas of Beaver County (trial court) which affirmed an order of the Zoning Hearing Board of the City of Aliquippa (Zoning Board). The Zoning Board's order affirmed the revocation of a building permit previously issued to Eltoron by the City of Aliquippa (City). This appeal presents three issues for our review. First, whether Eltoron preserved the issue of proper permit revocation notice by the City. Second, if so preserved, whether the City's permit revocation notice complied with the requirements of § 616.1 of the Municipalities Planning Code (MPC).[1] Third, whether the Zoning Board is vested with jurisdiction to resolve building permit disputes. For the reasons set forth herein, we affirm.

On or about June 6, 1997, Eltoron submitted a building permit application to the City for the property located at 1 Constitution Boulevard (Property). Eltoron completed the City's pre-printed permit application form by checking the appropriate boxes requesting a building permit for the purpose of repairing and remodeling the existing structure located on the Property.[2] Eltoron also indicated on the application that its proposed use of the Property would be nonresidential amusement and recreation. Robert Williams, the City's building code and zoning enforcement officer (Zoning Officer), consulted with the City's Solicitor, Myron Sainovich, regarding the zoning classification of the Property. Having been advised by Solicitor Sainovich that the area had been rezoned and was no longer classified as a conservation district,[3] the Zoning Officer issued Eltoron a building permit on June 9, 1997. By directive of the Aliquippa City Council, the Zoning Officer revoked Eltoron's building permit on July 14, 1997. The basis for the permit revocation was misrepresentation made on the application.

Eltoron timely appealed the permit revocation to the Zoning Board. The Zoning Board granted party status to citizens Jeanette Price and Flossie Gipson who intervened in this matter as persons immediately affected by the permit application pursuant to MPC § 908(3). 53 P.S. § 10908(3). The Zoning Board received extensive testimony regarding revocation of the building permit at hearings conduct-

---

1. Section 616.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by § 60 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10616.1.

2. In describing its remodeling plans, Eltoron specified that it proposed to install two restrooms, a kitchen, office space, seating areas, a serving area, glass block, certain stairwells and a front entrance at an estimated cost of $20,000.00. (City of Aliquippa Permit Application, City Exhibit 2).

3. Conservation districts are created to protect sensitive environmental areas existing at the time the zoning ordinance is enacted. Typically, conservation districts encompass floodplains, wetlands and steep slope areas, and permit only the most restrictive zoning uses. (12/9/97 Hearing Transcript at 89). Section 707 of the City's zoning ordinance defines three permitted uses within a conservation district including recreational, single-family residential and mobile home park uses. (City of Aliquippa Zoning Ordinance § 707).

ed on September 16, 1997, September 30, 1997 and October 14, 1997.

In addressing the issue of the permit revocation the Zoning Officer testified as follows. Eltoron submitted its building permit application to the City through its counsel, Myron Sainovich, a partner in the law firm of Sainovich, Santacolla and Colafella. Attorney Sainovich apparently was also the City's Solicitor during the building permit application process. (9/16/97 Hearing Transcript at 18; Trial Court Opinion at 5). Eltoron's building permit application arrived at the zoning office in an envelope reflecting the return address of the Sainovich, Santacolla and Colafella law firm. The Zoning Officer contacted Solicitor Sainovich to inquire into Eltoron's intended use of the Property given that the bar or restaurant apparent from the plans submitted with its application would not be a permitted use within a conservation district. Solicitor Sainovich revealed to the Zoning Officer that the actual intended use was a nude dance club and that the zoning classification of the Property had been changed to highway commercial or light industrial where said use would be permitted.[4] (9/16/97 Hearing Transcript at 14–17). Acting on the advice of Solicitor Sainovich, the Zoning Officer

issued the building permit in accordance with the plans submitted by Eltoron.

Through subsequent investigation the Zoning Officer determined that the rezoning of the district to highway commercial or light industry was part of a redevelopment proposal which Beaver County officials never acted upon. The district in question had not been rezoned and was therefore still zoned as a conservation district. (9/16/97 Hearing Transcript at 36, 49–50). The Zoning Officer stated that he was in the process of preparing a revocation notice when the Aliquippa City Council passed a resolution directing that he revoke the building permit. The Zoning Officer issued the revocation notice on July 14, 1997, upon concluding that Eltoron's permit application contained "apparent errors and/or inaccurate information and/or incomplete information." (Permit Revocation Letter, City Exhibit 3).

The Zoning Board dismissed Eltoron's appeal by order dated November 20, 1997. Eltoron appealed to the trial court,[5] which affirmed the Zoning Board's decision by order dated August 21, 1998. The trial court did not take any additional evidence. Eltoron now appeals the trial court's order to this Court.[6]

---

4. At the time of Eltoron's permit application, the City did not have an ordinance of any type prohibiting adult related businesses within the City. (Zoning Board Adjudication, Finding of Fact No. 16).

5. The trial court addressed the following six issues raised by Eltoron:
   1. Was the revocation of Eltoron's building permit in compliance and authorized in accordance with the laws and ordinances of the City?
   2. Did Eltoron make any false statements or misrepresentations of fact in the application or on the plans on which the permit or approval was based?
   3. Did Eltoron acquire vested rights in the building permit?
   4. Does the Zoning Board have jurisdiction to hear a building code case?
   5. Did the Zoning Board err in permitting intervention by the Citizens?

6. Did the City revoke the building permit beyond the 30-day limitation period as specified in 53 P.S. § 10914.1

(Eltoron's Trial Court Brief at 3–4). Eltoron waived all but its jurisdictional question for failure to preserve each issue on appeal before this Court.

6. In zoning cases where the trial court did not take any additional evidence, this Court's scope of review is limited to determining whether the Zoning Board committed an error of law or a manifest abuse of discretion. *Teazers, Inc. v. Zoning Board of Adjustment of the City of Philadelphia*, 682 A.2d 856 (Pa. Cmwlth.1996). The Zoning Board abuses its discretion, only if its findings are not supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

We begin with the question of whether Eltoron preserved the issue of proper permit revocation notice by the City. The City avers that Eltoron failed to comply with the issue preservation provisions of Pa. R.A.P. 302, 2117(c) and 2119(e), and therefore, is barred from asserting that the City failed to properly implement a zoning enforcement proceeding pursuant to MPC § 616.1. Pa. R.A.P. 302 specifies that issues not raised in the court below are waived and cannot be raised for the first time on appeal. Pa. R.A.P. 2117(c) and 2119(e) require that an appellant's brief must contain cites to the record showing where it preserved each appeal issue at each litigation stage below. Eltoron counters that it did raise the MPC § 616.1 argument at each litigation stage and that its brief complies with the requirements of Pa. R.A.P. 2117(c) and 2119(e).

Any party to an appeal before this Court who fails to strictly comply with all provisions of the Pennsylvania Rules of Appellate Procedure (Rules) is in peril of having its appeal dismissed. Our review of the record reveals that Eltoron's only discussion of its zoning enforcement proceeding argument appears in footnote ten (10) of its trial court brief. This lone assertion of an appeal issue before the trial court falls short of the developed argument anticipated by the Rules.[7] *See Schulmerich Carillons, Inc. v. Unemployment Compensation Board of Review,* 154 Pa.Cmwlth. 343, 623 A.2d 921, 923 (1993); *See also Nemoto v. Nemoto,* 423 Pa.Super. 269, 620 A.2d 1216, 1222 (1993) (Holding that a single statement mentioned in Appellant's brief hardly constitutes the type of developed argument necessary to preserve an issue on appeal). However, Eltoron did preserve its MPC § 616.1 argument in an extensive colloquy with the Zoning Board in support of its motion to dismiss based on the City's failure to comply with MPC § 616.1. (9/30/97 Hearing Transcript at 95–113). Furthermore, Eltoron expanded on its zoning enforcement notice argument in its motion for reconsideration before the trial court. *See Borough of Harveys Lake v. Heck,* 719 A.2d 378 (Pa.Cmwlth.1998) (Holding that a party must file post-trial a motion in order to preserve each issue for appellate review). Although Eltoron's compliance with the Rules is technically defective, we conclude that these defects do not preclude meaningful review of this issue on appeal.

Having disposed of the City's waiver argument, we now reach the merits of Eltoron's appeal. Eltoron asserts that both courts below erred by affirming the building permit revocation since the Zoning Officer did not issue a zoning enforcement notice in accordance with MPC § 616.1. 53 P.S. § 10616.1. The City counters that it did not institute a zoning enforcement proceeding against Eltoron, and therefore, its permit revocation notice was not subject to the requirements of MPC § 616.1. The City further asserts that it was fully justified in revoking Eltoron's building permit on misrepresentation grounds.[8] The revocation notice issued by the Zoning Officer read as follows:

Please accept this letter as formal notice that the Building Permit formerly issued regarding the above address is hereby revoked. The reasons for revocation in-

7. We are mindful of the fact that the Rules do not apply to appeals brought before a county court of common pleas from an administrative agency, except where the trial court specifically adopts the Rules or unless an applicable statute specifically provides that the Rules shall govern appeals to the trial court. See 1 G. Ronald Darlington, et al., Pennsylvania Appellate Practice, §§ 103.1 and 103.2 (2d ed. 1998). However, litigants are charged with knowledge of the Rules and how their actions at each litigation stage might impact any future appeal.

8. In addition to failing to disclose the commercial nature of Eltoron's intended use of the Property, the Zoning Board found that Eltoron's permit application contained other defects including omissions and defects in its renovation plans and seriously underestimating the cost of renovation. (Finding of Fact Nos. 26, 27, 28, 31, 32, 33, 39 and 41).

clude apparent errors and/or inaccurate information and/or incomplete information regarding the Application for Permit. All work must stop immediately and you shall not occupy said structure. You have the right to appeal to the Zoning Hearing Board within thirty (30) days.

(R.R. at 2a).

■ Eltoron maintains that this revocation notice is deficient since it failed to address the zoning enforcement provisions of MPC § 616.1.[9] Eltoron's reliance on this section of the MPC is misplaced since a zoning enforcement action need not be brought against a party who has acquired no right to occupy and use the property. *See Township of West Pikeland v. Thornton*, 106 Pa.Cmwlth. 560, 527 A.2d 174 (1987); *See also Visual–Education Devices, Inc. v. Springettsbury Township*, 54 Pa.Cmwlth. 529, 422 A.2d 235 (1980) (Holding that the property owner acquired no legal rights in a permit obtained by deceit and that revocation was proper where the permit application contained false and misleading information). The City correctly asserts that revocation of a building permit need not comply with MPC § 616.1 when the permit was acquired through misrepresentation asserted in the permit application.

■ The Property is located in a conservation district that only permits recreation and residential development uses. The City's zoning ordinance does not permit commercial businesses in conservation districts. The record reflects that Eltoron intended to operate a nude dance club for profit.[10] Eltoron did not apply for a building permit for use of the Property as a commercial business, but rather, indicated that it planned to use the Property for amusement and recreation. (Building Permit Application, City Exhibit 2). When the Zoning Officer questioned the discrepancy between the asserted use on the permit application and the commercial business apparent through the renovation plans, Eltoron's misrepresentation was perpetuated by its counsel, attorney Sainovich, who also served as the City's Solicitor at the time. The Zoning Officer erroneously issued the permit in reliance on advice from the City Solicitor that the district had been rezoned to permit commercial uses. (9/16/97 Hearing Transcript at 14–17). As we stated in *Bruno v. Zoning Board of Adjustment of City of Philadelphia*, 664 A.2d 1077 (Pa.Cmwlth.1995), a building permit issued under a mistake of fact confers no vested right or privilege and may be revoked at any time. We conclude that substantial evidence of rec-

9. Section 616.1 of the MPC provides in pertinent part:(a)

If it appears to the municipality that a violation of any zoning ordinance ... has occurred, the municipality shall initiate enforcement proceedings by sending an enforcement notice as provided in this section.
...
(c) An enforcement notice shall state at least the following:
(1) The name of the owner of record and any other person against whom the municipality intends to take action.
(2) The location of the property in violation.
(3) The specific violation with a description of the requirements which have not been met, citing in each instance the applicable provisions of the ordinance.
(4) The date before which the steps for compliance must be commenced and the date before which the steps must be completed.
(5) That the recipient of the notice has the right to appeal to the zoning hearing board within a prescribed period of time in accordance with procedures set forth in the ordinance.
(6) That failure to comply with the notice within the time specified, unless extended by appeal to the zoning hearing board, constitutes a violation, with possible sanctions clearly described.
53 P.S. § 10616.1.

10. Eltoron intended to charge five dollars ($5.00) per soft drink ticket per patron at the door. (Finding of Fact No. 18). It is unlikely that the "amusement and recreation" provided to the club's patrons would be delivered free of charge.

ord supports the Zoning Board's determination that Eltoron obtained the building permit through misrepresentation.

■ Eltoron's final argument questions whether the matter was properly before the Zoning Board. Eltoron asserts that the BOCA National Building Code of 1996[11] governs issuance and revocation of building permits, and therefore, the Zoning Board did not have jurisdiction to hear the appeal. The City adopted the BOCA Code through a local ordinance in 1996 although the record does not specify whether the City adopted the model code in its entirety. (9/16/97 Hearing Transcript at 47). The BOCA Code in its model form references a generic board of appeals in § 121.1 to which building permit appeals must be taken. BOCA National Building Code § 121.1 (13th ed.1996). Eltoron asserts that enforcement of building permit actions must be brought before this amorphous BOCA Board of Appeals. What Eltoron fails to recognize is that even if the City had created such an appeal board through a local ordinance, MPC § 909.1 vests exclusive jurisdiction in the Zoning Board to address disputes involving building permits and would preempt any local ordinance regarding such disputes. 53 P.S. § 10909.1. We addressed the MPC provisions vesting zoning boards with jurisdiction in *Soltis v. Hanover Associates*, 22 Pa.Cmwlth. 637, 350 A.2d 217 (1976), where we stated that "the exclusive mode for securing review of the actions of the building inspector in issuing both the zoning permit and the building permit was by appeal to the Zoning Hearing Board."[12]

Eltoron's jurisdictional argument is without merit.

### ORDER

AND NOW, this 14th day of April, 1999, the order of the Court of Common Pleas of Beaver County, dated August 21, 1998, is hereby affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. Unlike the majority, I do not believe that the record contains substantial evidence to support the Zoning Hearing Board's (ZHB) determination that Eltoron, Inc. (Eltoron) obtained its building permit from the City of Aliquippa (City) through misrepresentation. (*See* Majority op. at 154.) Thus, I would conclude that the notice requirements of section 616.1 of the Pennsylvania Municipalities Planning Code (MPC)[1] apply here.

Eltoron applied for a building permit to renovate the property at 1 Constitution Boulevard in the City for use as a nude dance club. Part C of the City's preprinted permit application form asks the applicant to designate the proposed use of the property by marking the appropriate box. The first box is labeled "Amusement, recreation," and the last box is labeled "Other – Specify." Obviously, it would only be necessary to place a mark in the last box if none of the enumerated uses applied. Eltoron marked the "Amusement, recreation" box, believing that its nude dance club would be recreational.

11. The Building Officials and Code Administrators (BOCA) National Building Code is a model set of standards and guidelines assembled and adopted by an international organization of builders and code administrators. The BOCA Code is revised every three years with the last revision occurring in 1996. (BOCA National Building Code (13th ed.1996)).

12. MPC § 909.1(a) provides: "The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters: ... (3) Appeals from

the determination of the zoning officer, including, but not limited to, the granting or denial of any permit...." Section 909.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, added by § 87 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1.

1. Section 616.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by section 60 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10616.1.

While some people might disagree with Eltoron about this, I suspect that the patrons of a nude dance club would find the club's activities to be recreational.[2] Thus, I do not believe that Eltoron misrepresented its proposed use on the permit application form.

The majority concludes otherwise because Eltoron planned to operate its nude dance club *for profit*. (Majority op. at 154.) Thus, the majority interprets the phrase "Amusement, recreation" on the City's permit application form to mean *non-commercial* amusement and recreational uses. I see no reason to depart from the plain words on the application form. Indeed, no applicant could possibly know that the words "amusement" and "recreation" actually mean "non-commercial amusement" and "non-commercial recreation." If those words really had such meanings, then applicants who are seeking permits to renovate bowling alleys, video arcades, miniature golf courses, movie theaters or any other commercial amusement or recreational establishment could not mark the "Amusement, recreation" box. This is absurd.[3]

The majority believes that Eltoron concealed its intended commercial use of the property on the application form because: "The City's zoning ordinance does not permit commercial businesses in conservation districts." (Majority op. at 154.) However, the majority does not cite any provision of the City's Official Zoning Ordinance (Zoning Ordinance) to support this statement. Indeed, nothing in the Zoning Ordinance prohibits commercial recreational uses in conservation districts. Quite the contrary, section 707 of the Zoning Ordinance permits "Recreational uses," without restriction, in conservation districts.

The majority's interpretation of the Zoning Ordinance flies in the face of at least three established rules of statutory construction.[4] First, courts must construe words and phrases according to their common and approved usage. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a). This court has recognized that "Recreational uses" is commonly used to refer to commercial recreational uses of property. *See Hawkins v. Zoning Hearing Board,* 76 Pa.Cmwlth. 470, 463 A.2d 1291 (1983) (applying the phrase "commercial recreational" uses to an adult massage center).

Second, when words are clear and free from all ambiguity, they are not to be disregarded under the pretext of pursuing their spirit. Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b). Here, the phrase "Recreational uses" in section 707 of the Zoning Ordinance is clear and free from ambiguity. Thus, we are not free to ignore its plain meaning because of a procrustean desire to achieve another result.

Third, "absent express limitation, permissive phrases in zoning ordinances are given their broadest meaning, ... and any ambiguities are resolved in favor of the landowner." *Gilbert v. Montgomery Township Zoning Hearing Board,* 58 Pa. Cmwlth. 296, 427 A.2d 776, 780 (1981) (citations omitted). Here, section 707 of the Zoning Ordinance puts *no* limitation, let alone an "express limitation," on recreational uses in conservation districts. Thus, we are constrained to give the phrase "Recreational uses" its broadest meaning. Moreover, if the phrase were ambiguous, we would be required to resolve any ambiguity in favor of Eltoron

---

2. The word "recreation" means diversion, play, amusement, entertainment or pleasurable diversion. *See Hawkins v. Zoning Hearing Board,* 76 Pa.Cmwlth. 470, 463 A.2d 1291 (1983).

3. We presume that a lawmaker does not intend a result that is absurd. Section 1922(1)

of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1).

4. The rules of statutory construction apply to both statutes and ordinances. *See Commonwealth v. Geigley,* 168 Pa.Cmwlth. 531, 650 A.2d 1224 (1994), *appeal denied,* 540 Pa. 638, 659 A.2d 557 (1995).

and conclude that section 707 of the Zoning Ordinance permits commercial recreational uses in conservation districts.

Finally, I note that when the drafters of the Zoning Ordinance intended to limit recreational uses in a particular zoning district, they did so explicitly. For example, in section 702 of the Zoning Ordinance, the drafters permitted only "recreational uses (non-commercial)" in high-density residential districts. The omission of such limiting language in section 707 of the Zoning Ordinance demonstrates that the drafters intended to allow commercial recreational uses in conservation districts.

Because I do not find substantial evidence in the record to support the ZHB's determination that Eltoron misrepresented its proposed use on the City's permit application form, I would conclude that the notice requirements of section 616.1 of the MPC apply here. Thus, I would reverse the order of the trial court.