41 VALLEY ASSOCIATES

v.

**BOARD OF SUPERVISORS OF LONDON GROVE TOWNSHIP.**

**Appeal of: William Welsh, Louis Deshullo, Karen Deshullo and Hans–Peter Schlobach.**

41 Valley Associates

v.

**Board of Supervisors of London Grove Township, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 9, 2005.

Decided Aug. 2, 2005.

Reargument and Reconsideration Denied En Banc Oct. 3, 3005.

**8**

Mary Ann Rossi, West Chester, for designated appellant, 41 Valley Associates.

J. Dwight Yoder, Lancaster, for appellees, William Welsh, Louis and Karen Deshullo, and Hans–Peter Schlobach.

William P. Lincke, West Chester, for appellee, Board of Supervisors of London Grove Township.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this local agency appeal, we consider whether the Board of Supervisors of London Grove Township (Board) erred in rejecting 41 Valley Associates' (Applicant)[1] proposal to include its property in an "agricultural security area" (ASA) pursuant to the Agricultural Area Security Law (Law).[2]

## I. Agricultural Area Security Law

The Law is designed to conserve and protect the Commonwealth's agricultural lands as valued natural and ecological resources, and to encourage the development and improvement of agricultural lands for the production of food and other agricultural products. Section 2 of the Law, 3 P.S. § 902; *Northwestern Lehigh Sch. Dist. v. Agric. Lands Condemnation Approval Bd.*, 134 Pa.Cmwlth. 291, 578 A.2d 614 (1990).[3]

The Law establishes a specific process for the conservation of farmland. *See Lenzi v. Agric. Land Preservation Bd.*, 144 Pa.Cmwlth. 571, 602 A.2d 396 (1992). The process begins when a landowner submits a proposal to the local governing body for creation of an ASA. Section 5 of the Law, 3 P.S. § 905(a). After a proposal is

---

1. Applicant is joined by the Pennsylvania Farm Bureau and the American Mushroom Institute as *amici curiae*.

2. Act of June 30, 1981, P.L. 128, *as amended*, 3 P.S. §§ 901–915. An ASA is "[a] unit of 250 or more acres of land used for the agricultural production of crops, livestock and livestock products under the ownership of one or more persons...." Section 3 of the Law, 3 P.S. § 903.

3. In addition, the Law is intended to: (i) encourage landowners to make a long-term commitment to agriculture by offering them

financial incentives and security of land use; (ii) protect farming operations in ASAs from incompatible "non-farm" land uses that may render farming impracticable; (iii) assure permanent conservation of productive agricultural lands to protect the Commonwealth's agricultural economy; (iv) provide compensation to landowners in exchange for their relinquishment of the right to develop their private property; and (v) leverage state agricultural easement purchase funds and protect the investment of taxpayers in agricultural conservation easements. 3 P.S. § 902.

submitted, the local governing body provides public notice of the request. 3 P.S. § 905(b). Comments and modifications are invited from other local government bodies affected, persons whose land is included in the ASA and neighboring landowners. *Id.*

The local planning commission reviews the proposal and advises the local governing body on the proposal's potential impact on local planning policies and objectives. 3 P.S. § 905(d)(1), (2). The local governing body then gives notice of a public hearing to consider the creation of the ASA. *Id.*

At the public hearing, the local governing body must consider five "evaluation criteria" to determine whether inclusion in an ASA is appropriate:

(a) **Factors to be considered.**—*The following factors shall be considered* by the planning commission, advisory committee, and at any public hearing:

(1) *Land proposed for inclusion in an [ASA] shall have soils which are conducive to agriculture.* This factor will have been satisfied without further consideration if at least 50% in the aggregate of the land to be included in an [ASA] falls into one of the following categories: land whose soils are classified in Soil Conservation Service Capability Classes I through IV, excepting IV(e); land which falls within the Soil Conservation Service classification of 'unique farm land'; or land whose soils do not meet Capability Classes I through IV but which is currently in active farm use and is being maintained in accordance with the soil erosion and sedimentation plan applicable to such land.

(2) *Use of land proposed* for inclusion in an [ASA] *shall be compatible with local government unit comprehensive plans. Any zoning shall permit agricultural use* but need not exclude other uses.

(3) The landowner may propose to include all of his land, regardless of zoning, in an [ASA].

(4) *The land proposed* for inclusion in the [ASA], and any additions which are proposed subsequently, *shall be viable agricultural land.*

(5) *Additional factors to be considered are the extent and nature of farm improvements, anticipated trends in agricultural economic and technological conditions and any other matter which may be relevant.*

(b) **Resource materials.**—*In considering the viability factors as set forth in this section, various resource materials shall be used,* including, but not limited to, the following:

(1) Soil surveys of the Pennsylvania State University.

(2) Soil surveys and other information provided by the National Cooperative Soil Survey.

(3) Soil survey maps prepared by the United States Soil Conservation Service.

(4) The United States census of agricultural categories of land use classes.

(5) Any other relevant published data, maps, charts, or results of soil or land use surveys made by any county, State or Federal agency.

Section 7 of the Law, 3 P.S. § 907 (emphasis added). *See also* 7 Pa.Code § 1381.26(a).

Following the public hearing and consideration of the evaluation criteria, the local governing body may adopt a proposal with or without modification. Section 8(a) of the Law, 3 P.S. § 908(a). Within 10 days of its decision to reject or modify a proposal, the governing body must provide the landowner a written decision explaining why the proposal was not adopted or was modified. 3 P.S. § 908(b). The written decision must include findings of fact, a

review of the evaluation criteria and a discussion of reasons for rejection or modification of the proposal. *Id.* Any party aggrieved by a local governing body's decision concerning the creation of an ASA may appeal to the court of common pleas. Section 10 of the Law, 3 P.S. § 910.

After land is designated as an ASA, a legal description is filed with the recorder of deeds and indexed in a way that is sufficient to give notice to potential purchasers of the designated lands and also adjacent lands. 3 P.S. § 908(d). Every seven years, the local governing body is required to review an ASA and determine whether it will continue the protected status. Section 9(a) of the Law, 3 P.S. § 909(a).

The benefits and protections of having land designated as an ASA include: (i) municipalities must encourage the ASA by not enacting ordinances that would restrict farm structures or farm practices; (ii) a local ordinance defining or prohibiting a public nuisance must exclude from the definition of the nuisance any agricultural activity or operation conducted using normal farming operations within the ASA; (iii) Commonwealth agencies with programs that might negatively affect farmers must conduct their programs in a manner that will encourage the continuance of viable agriculture in the ASA; (iv) entities seeking to acquire land in an ASA by eminent domain must obtain approval from the Agricultural Lands Condemnation Approval Board; and (v) the owner of land in an ASA comprised of 500 or more acres may be eligible to apply to sell an agricultural conservation easement to the Commonwealth, the county or a municipality. *See* Sections 11–13, 14.1 of the Law, 3 P.S. §§ 911–913, 914.1.[4] *See also* 7 Pa.Code § 1381.4.

The AASL also includes extensive provisions relating to the purchase of agricultural conservation easements.[5] *See* Sections 14.1–14.5 of the Law, 3 P.S. §§ 914.1–914.5.[6] One author described Pennsylvania's agricultural conservation easement program in the following terms:

Pennsylvania has attempted to preserve choice farmlands through the development of a program known as 'Purchase of Agricultural Conservation Easements' (PACE). It removes the incentives for farmers to sell their land in order to receive the developed value of the land. In Pennsylvania the program is known as PACE, while in general land use planning it is known as 'PDR' (Purchase of Development Rights). PDR pays a sum of money to farmers which represents the difference between the land's value as farmland and its development value. The program provides farmers with the opportunity to reinvest in their farms, plan for retirement, or use the windfall for some other purpose.

The Pennsylvania PDR provides for a State Agricultural Land Preservation Board that acts on the recommendations of similar county boards. The state board reviews and accepts certain recommended properties for the purchase

---

4. Section 14.1 of the Law was added by the Act of December 14, 1988, P.L. 1202.

5. An agricultural conservation easement is "[a]n interest in land, less than fee simple, which interest represents the right to prevent the development or improvement of a parcel for any purpose other than agricultural production. The easement may be granted by the owner of the fee simple to any third party or to the Commonwealth, to a county governing body or to a unit of local government. It shall be granted in perpetuity as the equivalent of covenants running with the land...." 3 P.S. § 903.

6. These Sections were added by the Act of December 14, 1988, P.L. 1202.

of a perpetual conservation easement. PDR also permits the County Agricultural Land Preservation Board to purchase agricultural conservation easements separately or jointly with the state. PDR mandates that land from which a conservation easement has been purchased be included within an ASA. As an additional benefit, land which has been subject to a conservation easement receives preferential annual real estate tax rates. Hence, the benefit of a PDR conservation easement to the owner is not solely of a short duration.

John M. Hartzell, *Agricultural and Rural Zoning in Pennsylvania: Can You Get There From Here?*, 10 Vill. Envtl. L.J. 245, 254–56 (1999) (footnotes omitted).

## II. Facts

Applicant owns a 152–acre parcel in London Grove Township, Chester County, known as the DuBosq Farm (Subject Property). The Subject Property lies in an Agricultural Preservation zoning district. Although it was previously used as a farm, the Subject Property is not currently in use.

In August 2003, Applicant submitted a proposal to the Board seeking to have the Subject Property included in the Township's ASA. After Applicant submitted its proposal, several neighboring landowners (Objectors) filed objections.

The Chester County Planning Commission reviewed the submissions. It determined Applicant's proposal was consistent with the Law's evaluation criteria. Significantly, it also determined that zoning for the parcel allows agriculture and that "the proposed agricultural use of the parcel [complies] with the future land use of the parcel, as mapped in the municipal comprehensive plan." Reproduced Record (R.R.) at 295a.

Approximately five months later, Applicant made a second, separate submission. It submitted an application and plan for conditional use approval for the Subject Property. According to the conditional use plan, Applicant proposes to develop the Subject Property for "Intensive Agricultural Use, Advanced Technology Preparation of Mushroom Growing Substrate." *See* R.R. at 148a. As indicated in its conditional use plan, Applicant proposes to construct, among other things, two wharves containing a total of 890,000 square feet of impervious area for mushroom substrate preparation. *Id.*[7]

The Board conducted an extended hearing covering several evenings on applications from various landowners for inclusion in an ASA. Applicant's request for inclusion of the Subject Property was the most controversial. At the first evening hearing, Applicant offered no testimony or evidence in support of its proposal. In opposition to the proposal, Objectors presented the expert testimony of a hydrologist-geologist and an environmental consultant, who testified primarily about the proposed use of the Subject Property as set forth in the separate conditional use application.

Objectors' hydrologist-geologist opined bacterial pollutants contained in runoff

---

7. Contrary to arguments of counsel and a comment by the trial court, it is not clear that inclusion of the Subject Property in an ASA *will change in any way the approvals ulti-mately required for Applicant's proposed use.* Specific provisions of the zoning ordinance address preparation of mushroom growing *substrate which utilizes advanced technology* and the storage of raw materials. *See* Section 301(A)(8), (B)(8) of the London Grove Town- ship Zoning Ordinance. We are not asked to decide now whether these specific provisions, or the more general provisions for intensive agriculture, control the application for conditional use. The issue will be addressed when the Board considers the application for conditional use.

In addition, we do not reach the issue of whether Applicant's proposed wharves fall within 3 P.S. § 911.

from Applicant's proposed mushroom substrate operation could contaminate important water sources. He questioned the design of certain proposed structures. He further opined "inclusion of the land considering its proposed use" is not compatible with the Township's comprehensive plan. R.R. at 38a–39a. However, he did not reference any particular provision of the comprehensive plan in his testimony.[8] Ultimately, the Board accepted Objectors' hydrologist-geologist as credible.

Objectors' environmental consultant opined Applicant's proposed use of the Subject Property rendered it inappropriate for inclusion in the Township's ASA. Specifically, he opined, mushroom compost, the byproduct of Applicant's proposed operation, is not a "crop" under the Law. Ultimately, the Board accepted Objectors' environmental consultant as credible.

Following the close of the evidentiary record, the Board received public comment on Applicant's ASA proposal. During this portion of the hearing, the president of the Chester Delaware Counties Farm Bureau spoke in favor of all applications, including that for the Subject Property. Among other things, he gave information on mushroom substrate preparation as a trend in mushroom farming. R.R. at 76a–92a.[9]

The Board subsequently issued a written decision denying Applicant's request for inclusion of the Subject Property in the ASA. In its decision, the Board analyzed the statutory evaluation criteria, and determined Applicant's proposal did not satisfy criteria (2) and (5). Notably, the Board specifically determined Applicant's proposal satisfied the remaining applicable evaluation criteria. As to the second criterion, the Board determined Applicant's proposed use would conflict with the comprehensive plan's goal of conserving and improving natural resources. As to the fifth criterion, the Board determined, based on Applicant's separate conditional use plan, the Subject Property would not be used primarily for agricultural purposes but rather for the industrial purpose of manufacturing mushroom substrate. It also determined the Subject Property's inclusion in the ASA could threaten important water sources by limiting the controls that could be imposed on the proposed industrial use. The Board further determined the proposed use was contrary to the Law's purpose as it would not protect agricultural lands. Applicant appealed to the Court of Common Pleas of Chester County (trial court).

The trial court determined the Board erred in concluding Applicant's proposal did not comply with the disputed criteria. As to the second criterion, the trial court concluded the Board erred in determining Applicant's proposed use would be inconsistent with the comprehensive plan. As to the fifth criterion, the trial court determined the Board erred in considering Applicant's conditional use plan in the context of the Law proceeding on the grounds that a proposed use is irrelevant to determining whether ASA

8. Board Findings Nos. 28 and 29 suggest that this expert testified about the Township's Open Space and Recreation Plan. Bd. Op. Findings of Fact (F.F.) Nos. 28, 29. However, this expert did not do so. References with these findings make it clear they were derived from a prepared statement read by the Board Chairman as the decision was announced and not from testimony received during the public hearing.

9. The public comment continued into a second evening. During the second evening, counsel for Applicant, who was not present the first evening, made comments and submitted a written statement in support of the proposal, which the Board admitted over objection.

designation is appropriate. Rather, the trial court stated, the Township's zoning and subdivision and land development ordinances would regulate use of the Subject Property. Thus, the trial court reversed the Board and granted Applicant's proposal. Objectors and the Board appeal to this Court.[10]

■ In evaluating a local agency decision, where a complete record is made before the agency, our review is limited to determining whether the agency committed an error of law and whether the agency's material findings are supported by substantial evidence. *Piatek v. Pulaski Township*, 828 A.2d 1164 (Pa.Cmwlth. 2003), *petition for allowance of appeal denied*, 579 Pa. 706, 857 A.2d 681 (2004).

■ On appeal, most of the arguments advanced by the parties focus on the trial court's opinion.[11] However, we review *the Board's decision* to determine whether it committed an error of law and whether its necessary findings are supported by substantial evidence.

### III.  Disputed Evaluation Criteria

### A.  Compatibility with Comprehensive Plan/Zoning

■ The Board determined the soils criterion and the viable agricultural land factor criterion were met. Bd. Op. C.L. Nos. 52, 55. As all the land in question is zoned the same, the third criterion was not relevant. Compatibility with the comprehensive plan and zoning, the second statutory criterion, and additional factors, the fifth statutory criterion, were hotly disputed.

We first consider the Board's determination that Applicant's ASA proposal failed to satisfy the second evaluation criterion, i.e., compatibility with the comprehensive plan and zoning. The Board concluded, as a matter of law, Applicant's proposed use of the Subject Property was inconsistent with the comprehensive plan. Specifically, it determined:

53. The [Board] find[s] that the use of land proposed for inclusion in the ASA is not compatible with London Grove Township's comprehensive plan.

54. The proposed use of the [Subject Property] conflicts with the goal of the comprehensive plan to conserve and improve natural resources of the township that are essential to its character and to preserve these features from the undesirable impact of change.

C.L. Nos. 53, 54. We believe the Board's conclusions are erroneous.

10. Applicant moves to suppress Objectors' reply brief, alleging it fails to conform to Pa. R.A.P. 2113(a). Rule 2113(a) allows an appellant to file a brief in reply to matters raised in an appellee's brief that were not previously raised in appellant's brief. Based on our review of the briefs submitted by the parties, we conclude Objectors' reply brief complies with Pa. R.A.P. 2113(a) because it replies to issues raised in Applicant's Brief. *See Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Township*, 840 A.2d 484 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 579 Pa. 694, 856 A.2d 835 (2004).

However, appended to Objectors' reply brief is an application for preliminary land development apparently submitted by Applicant after Objectors and the Board filed their appeals to this Court. Objectors assert they attached the application in an effort to show Applicant intends on developing the Subject Property for its proposed mushroom substrate operation. They ask this Court to take judicial notice of the application. We decline to do so. *See, e.g., Mack v. Zoning Hearing Bd. of Plainfield Township.*, 126 Pa.Cmwlth. 80, 558 A.2d 616 (1989) (court would not take judicial notice of documents that were not part of the original record in zoning case).

11. Since most of the arguments advanced by the parties focus on the trial court's opinion rather than on the Board's decision, which is the subject of our review, our analysis departs from the arguments advanced by the parties.

The governing body must consider several factors. All of the factors relate in one way or another to whether the land in question can be used for agriculture in the present and in the future. The second and third criteria to be considered relate to legal restrictions on agricultural uses:

(2) Use of land proposed for inclusion in an [ASA] shall be compatible with local government unit comprehensive plans. Any zoning shall permit agricultural use but need not exclude other uses.

(3) The landowner may propose to include all of his land, regardless of zoning, in an [ASA].

3 P.S. § 907(a)(2), (3). These factors address whether the proposed land is viable agricultural land from a legal viewpoint. Agricultural uses should be consistent with present zoning. In addition, agricultural uses should be consistent with future zoning, as best estimated in the comprehensive plan.

Here, the Subject Property is zoned Agricultural Preservation. Thus, current zoning clearly permits agricultural uses by right. In fact, the zoning ordinance specifically allows in this district preparation of mushroom growing substrate which utilizes advanced technology and the storage of raw materials. Section 301 of the London Grove Zoning Ordinance. Also, the future use of the property mapped in the comprehensive plan is mostly agriculture and also constrained areas. R.R. at 295a. The record contains no evidence to the contrary. Thus, the land proposed for inclusion is consistent with present and future zoning.

■■■ The Board erred when it departed from analyzing the current and future zoning for the Subject Property and focused instead on the comprehensive plan's goals.[12] The Law directs that published data, maps and charts shall be used in evaluating criteria. 3 P.S. § 907(b)(5). This information is public, objective and definite. Rather than the general goals of the comprehensive plan, which are open to interpretation, the maps of future uses in the comprehensive plan are the primary resource.

■■■ This analysis is consistent with the approach used in zoning law, which we find instructive. Thus, an applicant seeking a special exception or conditional use bears the burden of proving its request complies with the specific, objective requirements contained in a zoning ordinance. *Hogan, Lepore & Hogan v. Pequea Township Zoning Bd.*, 162 Pa.Cmwlth. 282, 638 A.2d 464 (1994). However,

Our case law has long held that where municipalities place general, non-specific or non-objective requirements into an ordinance dealing with special exceptions or conditional uses ... such general provisions are not usually seen as part of the threshold persuasion burden and presentation duty of the applicant.

*Commonwealth, Bureau of Corr. v. City of Pittsburgh*, 91 Pa.Cmwlth. 293, 496 A.2d 1361, 1363 (1985), *aff'd*, 516 Pa. 75, 532

12. Also, the Board erroneously relied on expert opinion evidence. More specifically, in support of its determination that Applicant's proposed use is inconsistent with the Township's comprehensive plan, the Board relied on the opinion of Objectors' hydrologist-geologist. Bd. Op., F.F. No. 40. In general, expert opinion on a question of law is inadmissible. *See, e.g., Browne v. Commonwealth*, 843 A.2d 429 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 581 Pa. 681, 863 A.2d 1149 (2004). Because the issue of compatibility with the Township's comprehensive plan and applicable zoning regulations is a question of law, the Board erred in relying on expert opinion to support its determination. Further, this expert did not reference any particular provision of the comprehensive plan.

A.2d 12 (1987) (citing *Bray v. Zoning Bd. of Adjustment*, 48 Pa.Cmwlth. 523, 410 A.2d 909 (1980); *In re Appeal of Baker*, 19 Pa.Cmwlth. 163, 339 A.2d 131 (1975)).

*Baker* is helpful. There, a developer applied for a special exception to construct a residential development consisting of several townhouses. The zoning hearing board denied the request on the grounds the developer failed to prove he complied with the zoning ordinance's purpose of assuring "the designs of multi-family residential land development [are] integrated and compatible with the environment of adjacent and nearby land uses." *Id.* at 136. This Court determined the zoning hearing board could not require the developer to prove compliance with a general policy statement expressed in the zoning ordinance. We stated,

> It is in the nature of a special exception to require that the applicant meet reasonably definite conditions, and it would be manifestly unfair to require him to prove conformity with a policy statement, the precise meaning of which is supposed to be reflected in specific requirements.

*Id.*

Similar to the zoning hearing board in *Baker*, the Board here determined Applicant's proposal did not satisfy the second statutory criterion based on its failure to comply with a general "goal" expressed in the comprehensive plan rather than a specific, objective requirement. As in *Baker*, the Board erred in requiring Applicant to prove compliance with a general policy statement rather than a specific standard.

For these reasons, we believe the Board erred in determining Applicant's ASA proposal failed to comply with the second statutory criterion.

## B. "Additional Factors"

██ The Board also determined Applicant's proposal did not satisfy the fifth evaluation criterion, which requires consideration of three "additional factors." Those factors are: (1) the extent and nature of farm improvements, (2) anticipated trends in agricultural economic and technological conditions, and (3) any other matter which may be relevant. 3 P.S. § 907(a)(5). With regard to the fifth criterion, the Board determined:

56. The [Board] find[s] that there are additional factors relating to the [Subject Property] which warrant consideration, including the following:

a. Based upon the extent and nature of the proposed improvements to the [Subject Property] as set forth in the [c]onditional [u]se [p]lan, the [Board] believe[s] that the [Subject Property] will not be used primarily for agricultural purposes but rather for the industrial purpose of manufacturing mushroom substrate. 3 P.S. § 907[(a)](5).

b. The [Board] believe[s] that the inclusion of the [Subject Property] into the ASA could adversely affect the safety, health and welfare of the community and threaten important regional water resources, particularly the Cockeysville Marble and the White Clay Creek, by limiting the controls and regulations that could be imposed upon the proposed industrial type substrating / composting operation at [the Subject Property]. 3 P.S. § 907[(a)](5).

c. The Application is inconsistent and contrary to the policy and purpose of the Law. The proposed inclusion of the [Subject Property] into the ASA will not conserve and protect agricultural lands as valued natural and ecological resources.

Bd. Op. C.L. No. 56. We believe the Board's conclusions are erroneous, for several reasons.

■ First and foremost, the Board erred when it denied inclusion of the proposed land based on concerns for a specific use. As is readily apparent from the preceding discussion of the Law, its purpose is not to enable a specific use; rather, its purpose is to preserve land for a broad class of uses which are agricultural in nature. *Lenzi; Lehigh Sch Dist.* The Law's evaluation criteria address whether the land proposed for inclusion is appropriate for agricultural uses now and in the future.

■ The "additional factors" cited by the Board do not relate to whether the proposed land is appropriate for agricultural uses now and in the future.[13] Indeed, the Board did not conclude that the land was inappropriate for all agricultural uses, or even some agricultural uses. Instead, the Board determined the specific proposed use should not be located on the land.[14] This is not an "additional factor" contemplated by the Law.

■ A governing body may consider past, present and pending uses of a property to the extent such evidence tends to shed light on the ultimate inquiry of whether the land is appropriate for agricultural uses now and in the future. However, a hearing on inclusion of land in an ASA should remain focused on the land as conducive for the broad class of agricultural uses and not on any specific use. Moreover, a hearing on inclusion of land in an ASA should not devolve into a debate on zoning and land development approval for a specific use, as happened here. Those issues will be addressed in separate proceedings.

Second, for the reasons previously stated, the Board erred when it determined the proposed land fails to satisfy the "additional factors" criterion because its future use conflicts with the Law's "policy and purpose" rather than any specific standard of the statute.

## IV.  Remedies

■ If a local agency's adjudication is not affirmed, the reviewing court may enter any order authorized by 42 Pa.C.S. § 706. 2 Pa.C.S. § 754(b). The Judicial Code provides that an appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances. 42 Pa. C.S. § 706.

Like the trial court, we conclude the Board committed multiple errors of law, as discussed above.[15] While the Law affords

---

13.  Further, the Board failed to make any determinations regarding "anticipated trends in agricultural economic and technological conditions" as required by the Law. This topic relates to whether the land will be appropriate for agricultural uses in the future. The only information in the record on this topic favored inclusion, but the Board did not mention it. R.R. at 86a–93a.

14.  The Board erred when it relied on the opinion of Objector's environmental consultant that the proposed mushroom substrate operation did not produce a crop within the meaning of the Law. Bd. Op., F.F. Nos. 44, 45; *see* R.R. at 64a. Interpretation of the Law is a question of law and not an appropriate subject of expert testimony. *See, e.g., Browne.*

15.  In addition to the errors previously discussed, we note the Board failed to explain how it weighed the statutory criteria. In its discussion, the Board did not even acknowledge the criteria it found were satisfied. Further, it did not explain why "additional factors" outweighed the express statutory factors.

the Board initial discretion in determining applications for inclusion of land in an ASA, the Law does not allow the Board to make uncorrected errors of law. Nor is deference due the Board's decision when errors of law are present. Therefore, its order is not affirmed.

Like the trial court, we reverse the Board's denial of the Subject Property's inclusion in an ASA, as permitted by the Judicial Code. Three of the four relevant statutory criteria are satisfied. These include the soils criterion, the comprehensive plan and zoning criterion, and the viable agricultural land criterion. As to the "additional factors," we note that the Board made no determination that the land proposed for inclusion is inappropriate for agricultural uses generally, and the determinations it made do not relate to the ultimate inquiry for this application.

We decline the Board's invitation to remand. No party suggests that new evidence is available, and no party explains what would be accomplished by prolonging the process. Where, as here, an issue may be resolved as a matter of law based on the existing record, a remand is unnecessary. *McCoy v. Roth*, 128 Pa.Cmwlth. 374, 563 A.2d 606 (1989).

### ORDER

AND NOW, this 2nd day of August, 2005, the order of the Court of Common Pleas of Chester County, dated December 15, 2004, in the above captioned matter is **AFFIRMED** on other grounds.