**UNION TOWNSHIP and Union Township Zoning Hearing Board**

v.

**ETHAN MICHAEL, INC., Sophia Ariana, Inc. and Louis J. Mascaro, Appellants.**

Commonwealth Court of Pennsylvania.

Argued June 10, 2009.

Decided July 23, 2009.

Reconsideration and Clarification Denied Sept. 29, 2009.

---

William F. Fox, Jr., Audubon and William H. Lamb, West Chester, for appellants.

Josele Cleary, Lancaster, for appellee, Union Township.

BEFORE: SIMPSON, Judge, FRIEDMAN, Senior Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Ethan Michael, Inc., Sophia Ariana, Inc., and Louis Mascaro (hereafter collectively referred to as EMI) petition for review of an order of the Court of Common Pleas of Berks County (trial court), reversing the decision and order of the Union Township Zoning Hearing Board (the Board), which granted EMI's application for special exception. We now reverse.

On August 14, 2001, EMI filed an application for special exception with the Board seeking to develop a recreational motor sports park/racetrack and a commercial campground.[1] EMI sought to develop a recreational motor sports park in an area zoned as an Agricultural Preservation Zoning District; and a commercial camp-

ground in an area zoned as a Highway Commercial District. The areas were located on the northern and southern sides of Route 724, a state highway in Union Township, Berks County, Pennsylvania. The Union Township Zoning Ordinance (the Ordinance) allows both uses by special exception.

Sixteen hearings were conducted from November 28, 2001, through January 22, 2003. However, the hearings were then stayed for a period of time due to two civil proceedings initiated by EMI; one in which it sought a recusal and disqualification of a Board member who had been newly appointed and one in which it made an allegation that it had been denied procedural due process.[2] Eventually, forty-eight additional hearings were held from March 15, 2005, through January 3, 2007, before a hearing officer appointed by the Board.

On July 23, 2007, the hearing officer issued a seventy-seven page report, noting that he had participated in sixty-two hearings, admitted more than 100 exhibits and received numerous expert reports in the

1. The parties to the special exception proceedings were the Union Township Board of Supervisors and the Union Township Planning Commission, who participated as intervenors, and an organization known as Union Township United, a group of citizens who owned and/or resided on lands near the subject property, who participated as a party protestant.

2. At the commencement of the hearings, the Board consisted of Paul Druzba, Cuthbert Narin, III and Donald Jacobs. In January 2003, due to the expiration of a member's term and a resignation, the Board members were Mr. Jacobs, J. Christopher Cuesta and Richard Stevens, Jr. At the hearing before the Board held on January 22, 2003, EMI challenged the right of Mr. Cuesta to participate in the hearing and Union Township United challenged the participation of Mr. Jacobs on the

grounds of bias. The Board declined to hold an evidentiary hearing on the bias of either Board member. Subsequently, on February 4, 2003, EMI filed a petition with the trial court requesting that Mr. Cuesta be prohibited from serving on the Board. On April 3, 2003, the trial court ordered the recusal of Mr. Cuesta. EMI also filed a civil rights action in the United States District Court for the Eastern District of Pennsylvania (federal court) requesting a temporary restraining order and preliminary injunction to prevent the Board from holding further hearings. On June 23, 2003, the federal court issued an order staying all Board proceedings in the matter pending resolution of the action. Ultimately, the action was dismissed by the federal court and subsequently affirmed by the United States Court of Appeals for the Third Circuit on August 17, 2004.

matter. In the report, the hearing officer recommended approval of EMI's special exception application for both the motor sports park and the commercial campground. However, the hearing officer recommended that the special exception approval be subject to certain conditions as contained in Annex "C" and Annex "D." Specifically, Annex "C" was a recitation of the conditions to be imposed with respect to the approval for the commercial campground, while Annex "D" referred to the conditions to be imposed with respect to the motor sports park.

Subsequently, on August 22, 2007, the Board adopted the hearing officer's report as its final decision. The Board made some modifications to the conditions and incorporated the modifications, changes and additions into documents entitled "Substitute Annex 'C,' Substitute Annex 'D,' and Revisions and Classifications." (EMI's Brief at Exhibit A). On September 18, 2007, Union Township (the Township) filed a notice of land use appeal with the trial court.[3] EMI participated as an intervenor in the land use appeal.

On December 11, 2008, the trial court, without taking additional evidence, issued its opinion reversing the Board's order and denying EMI's special exception application for both the motor sports park and the commercial campground. The trial court concluded that EMI did not have standing to file a special exception application for the commercial campground because it had not joined Schuylkill River Greenways Association (Greenways Association) as a party to the action. The trial court noted that Greenways Association was the owner of a public walking trail which traversed the entire east-west width of EMI's property and, thus, the trail had to be crossed at certain points to gain access to the proposed commercial campground. Thus, the trial court concluded that Greenways Association was an indispensable party.

Moreover, the trial court concluded that although the motor sports park was included within the definition of recreation area pursuant to the Ordinance, the hearing officer and the Board had not considered the "contextual circumstances, including the size and intensity of the use, and the impact on the surrounding neighborhood." (EMI's Brief at Exhibit B, Trial Court Opinion at 18). The trial court noted that Section 401.4 of the Ordinance provided that special exception uses were also subject to, and had to be in accordance with, the provisions contained in Section 1105.2 of the Ordinance.[4] Thus, the trial court noted that "[g]ermane to this application" was the consideration of Sections 1105.2(C) and 1105.2(F) of the Ordinance which provide that the use shall not adversely affect the character of the general neighborhood and must be consistent with the Town-

---

3. Later, on December 14, 2007, the Township filed a motion seeking to present additional evidence to the trial court concerning a statement made by Mr. Jacobs that the hearing officer had contacted persons outside of the hearings to obtain information. On July 1, 2008, the trial court denied the Township's motion. On May 1, 2008, while the land use appeal was still pending, the Board filed a petition for declaratory judgment and mandamus requesting that the trial court direct the Township to amend its budget and allocate $100,000 to the Board to be used for its participation in the land use appeal. After oral argument, the Township appropriated a lower sum to the Board, as suggested by the trial court, to be used for litigation costs.

4. Section 401.4 of the Ordinance provides that uses permitted by special exception in an agricultural preservation district, when a special exception is granted subject to and in accordance with Article XI of the Ordinance, shall include "Recreation uses, subject to Section 906 of this Ordinance." (R.R. at 208a).

ship's Comprehensive Plan. (EMI's Brief at Exhibit B, Trial Court Opinion at 19).

The trial court concluded that the hearing officer's ruling, and, therefore, the Board's decision adopting the hearing officer's report, was, "in essence a statement that [Section 1105.2(F) of the Ordinance] should be given little or no effect" because it presumed that "there [were] no limitations whatsoever to a recreation use" in the agricultural preservation district other than certain dimensional requirements. (EMI's Brief at Exhibit B, Trial Court Opinion at 21–22). The trial court noted that the "parameters" set by the Ordinance regarding an agricultural preservation district were established by its purpose clause and the "sole purpose" for an agricultural preservation district was agricultural preservation. (EMI's Brief at Exhibit B, Trial Court Opinion at 22–23). However, the trial court recognized that it was "clear that the Township did not intend all land in an [agricultural preservation district] to be exclusively reserved for agricultural preservation." (EMI's Brief at Exhibit B, Trial Court Opinion at 24).

Next, the trial court considered the "scale" of EMI's proposed nonagricultural use and concluded that because it encompassed a large percentage of the agricultural preservation district, it would cause the loss of a substantial portion of the lands that the Township sought to preserve. Further, the trial court reasoned that the purpose of EMI's proposal was to build a motor sports park and a camp-ground and not to preserve agricultural lands, and if EMI was allowed to do so, the lands would never be available for agriculture again unless the motor sports park and the campground were abandoned.

The trial court concluded that EMI's proposed uses would adversely affect the general character of the rural and quiet neighborhood, increase traffic in the area, substantially increase the noise and forever transform the nature of the community. Thus, the trial court reversed the order of the Board. EMI then responded by filing a notice of appeal with the trial court.

On appeal,[5] EMI argues that the trial court exceeded the scope of its appellate authority by *sua sponte* considering issues that were not raised or briefed by the Township and, thus, had been waived. Specifically, EMI argues that the trial court improperly considered the issue of its compliance with Section 1105.2(C) of the Ordinance, regarding adversity with the character of the general neighborhood, and Section 1105.2(F) of the Ordinance, regarding consistency with the Township's Comprehensive Plan because the Township failed to preserve this issue. EMI asserts that should this Court agree with it on this issue, its second and third issues need not be considered, but in the alternative, EMI argues that the Board did not err in approving its special exception application because it met the requirements for approval. Finally, EMI argues that the Board did not err in finding that it had

---

5. Our scope of review in a land use appeal, where the trial court has not taken additional evidence, is limited to determining whether the local governing body committed an error of law or whether the necessary findings of fact were supported by substantial evidence. *Herr v. Lancaster County Planning Commission*, 155 Pa.Cmwlth. 379, 625 A.2d 164 (1993), *petition for allowance of appeal denied*, 538 Pa. 677, 649 A.2d 677 (1994). A conclusion that the Board abused its discretion may be reached only if its findings are not supported by substantial evidence. *Centre Lime and Stone Company, Inc. v. Spring Township Board of Supervisors*, 787 A.2d 1105 (Pa. Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 740, 798 A.2d 1291 (2002). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

standing because Greenways Association was not a necessary party.

■ In a land use appeal, when an issue has not been raised on appeal before a court of common pleas, that issue has not been properly preserved for review. *Agnew v. Bushkill Township Zoning Hearing Board*, 837 A.2d 634 (Pa.Cmwlth.2003), *petition for allowance of appeal denied*, 578 Pa. 702, 852 A.2d 313 (2004). Further, this Court has held that any party to an appeal before this Court who fails to strictly comply with all provisions of the Pennsylvania Rules of Appellate Procedure (the Rules) is in peril of having its appeal dismissed; nevertheless, the Court will consider the defect and whether meaningful review has been precluded.[6] *See Means v. Housing Authority of City of Pittsburgh*, 747 A.2d 1286 (Pa.Cmwlth.2000) (concluding that appellant's *pro se* appeal would be quashed due to his substantial and repeated failures to comply with the briefing requirements articulated in the Rules by failing to provide the court with a standard of review, a scope of review, a statement of the case and a summary of the argument); *Eltoron, Inc. v. Zoning Hearing Board of City of Aliquippa*, 729 A.2d 149 (Pa.

Cmwlth.1999), *petition for allowance of appeal denied*, 563 Pa. 632, 758 A.2d 664 (2000) (finding that Eltorons discussion of an issue on appeal which was limited to a footnote was insufficient to preserve the issue under the Rules; however, it had preserved other issues through its development in other documents and although its compliance with the Rules may have been technically defective, it did not preclude meaningful review of the other issues); *Roseberry Life Insurance Company v. Zoning Hearing Board of City of McKeesport*, 664 A.2d 688 (Pa.Cmwlth. 1995) (noting that although a party's statement of the case did not include information explaining how issues were raised and preserved as required by the Rules, that defect alone did not preclude meaningful appellate review or cause all of the issues to be waived).

■ Although we disagree with the Township's assertion that it "specifically raised" EMI's compliance with Sections 1105.2(C) and (F) of the Ordinance in Paragraph 17 of its notice of land use appeal, we do not believe that the Township has waived the issue.[7] Additionally,

---

6. The Rules provide that an issue is not reviewable on appeal unless raised or preserved below and the statement of the case shall also specify:

 (1) The state of the proceedings in the court of first instance, and in any appellate court below, at which, and the manner in which, the questions sought to be reviewed were raised.
 (2) The method of raising them (e.g. by a pleading, by a request to charge and exceptions, etc.).
 (3) The way in which they were passed upon by the court.
 (4) Such pertinent quotations of specific portions of the record, or summary thereof, with specific reference to the places in the record where the matter appears (e.g. ruling or exception thereto, etc.) as will show that the question was timely and properly

raised below so as to preserve the question on appeal.
 Pa. R.A.P. 2117(c).

7. Paragraph 17 of the Townships notice of land use appeal provides the following:
 T. The Zoning Hearing Board abused its discretion, capriciously disregarded the evidence, and committed errors of law when it determined that the noise and other impacts to be generated by the Racing Facility would not be detrimental to public health, safety and welfare.
 U. The Zoning Hearing Board abused its discretion, capriciously disregarded the evidence, and committed errors of law in making findings of fact contrary to all of the testimony and evidence of record including or unsupported by any evidence of record, but not limited to . . .
 (Township's Brief at 17).

we note that in its brief to the trial court, the Township referenced a different subsection of the Ordinance. However, evidence does exist, albeit minimal, to support the Township's allegation that it did not waive the issue and to allow meaningful review. For example, after a lengthy discussion about the noise levels which EMI proposed would be generated by the motor sports park, the Township asserted before the trial court as follows:

> Even in the absence of any provisions in the Zoning Ordinance providing standards for noise, the Court can consider noise proposed to be generated by a special exception use pursuant to Section 1105.2C of the Zoning Ordinance which requires that a use 'shall not adversely affect the character of the general neighborhood, nor the conservation of property values, nor the health and safety of residents or workers on adjacent properties and in the general neighborhood.'

(R.R. at 100a–101a).

■ Thus, we must consider whether the Board addressed the consistency of EMI's proposal with the comprehensive plan and its non-adversity to the character of the general nature of the neighborhood in determining the ultimate question of whether the Board erred in granting EMI's application for special exception.

EMI argues that the Board found that it had met all the requirements for a recreational use as provided by Section 906 of the Ordinance and also found that it met the general requirements of Section 1105.2 of the Ordinance. EMI argues that unless the trial court found that the Board abused its discretion or committed an error of law, it was bound to uphold the Board's findings and decision. EMI argues that the facts recited by the trial court mirror those made by the Board and that the trial court did not specifically find that any of the Board's findings were unsupported by substantial evidence. Therefore, EMI argues that the trial court improperly raised its own concerns about the size and intensity of the proposed recreational park within an agricultural district and the policy of agricultural preservation. We agree.

■■ A special exception is not an exception to a zoning ordinance, but rather it is a use to which the applicant is entitled if it meets the objective standards in the zoning ordinance for special exception approval. *In Re Thompson,* 896 A.2d 659 (Pa.Cmwlth.2006), *petition for allowance of appeal denied,* 591 Pa. 669, 916 A.2d 636 (2007). The allowance of a special exception use in a particular zoning district indicates legislative acceptance that the use is consistent with the municipality's zoning plan and that the special exception use, if the applicable objective standards are met, does not adversely affect the public interest of health, safety and welfare. *Broussard v. Zoning Hearing Board of Adjustment of the City of Pittsburgh,* 831 A.2d 764, 772 (Pa.Cmwlth.2003), *affirmed,* 589 Pa. 71, 907 A.2d 494 (2006).

■ The applicant has the burden of proving that the proposed use is a type permitted by special exception and that the proposed use complies with the requirements in the ordinance for such a special exception. *Agnew,* 837 A.2d at 637 (citation omitted). Once the applicant shows compliance with the specific requirements of the ordinance, the burden shifts to the protestors to prove that the proposed use will have an adverse effect on the general public. *Id.*

Section 906 of the Ordinance provides the standards and controls applicable to recreational uses. It includes setback requirements, screening and buffering requirements, ground cover standards, parking facility standards and specifications,

parking area and driveway lighting requirements.

Section 1105.2C of the Ordinance provides that an applicant for special exception shall demonstrate that:

[s]uch use shall not adversely affect the character of the general neighborhood, nor the conservation of property values, nor the health and safety of residents or workers on adjacent properties and in the general neighborhood.

(R.R. at 215a).

Section 1105.2F of the Ordinance provides that the applicant shall also demonstrate that "[t]he granting of the Special Exception shall be consistent with the Township Comprehensive Plan." (R.R. at 215a).

The hearing officer's decision sets forth the following regarding its consideration of EMI's application as it relates to the requirements of Section 1105 of the Ordinance:

The Board of Supervisors, in their legislative function, made a legislative decision that 'Recreation Uses' were to be permitted in the Agricultural Preservation Zoning District when authorized as a Special Exception. I have previously determined that the [motor sports park] is a 'Recreation Use,' and in doing so, it became a use, in its generic form, that would be permitted in that zoning district. The use comes with all its beauty and all of its warts. The application can only be defeated when it presents an impact substantially different and quantitatively more intense than would be anticipated for the generic use. No testimony has been presented to demonstrate that this [motor sports park] would be substantially different from any other [motor sports park]. Most of the nearby land is farmland and the applicant has presented a system of berms and noise barriers to reduce the

impact upon the general neighborhood. But the nature of the surrounding neighborhood must be judged not only by what is now extant but also what is permitted. A zoning ordinance gives no license to perpetuate silence. Neither was any evidence other than conjecture presented to demonstrate that the use, if approved subject to appropriate conditions, would impair neighboring property values or uses.

. . .

The ordinance requires that the proposed use will not adversely affect the character of the general neighborhood. There are two things that this sentence does not mean. It is not directed to any individual property, but rather to the neighborhood as a whole. Secondly, this does not mean that there will be no impact from the presence of the use, but rather the overall character of the neighborhood will not be adversely affected. The character of the neighborhood envisioned by the enactment of this provision is a neighborhood developed consistently with the permitted uses under the ordinance.

. . .

But suffice it to say, the routine operations envisioned by the application will not adversely affect the character of the general neighborhood and there is no evidence whatsoever that property values would be adversely affected.

(EMI's Brief at Exhibit A, Hearing Officer's Decision at 63–65).

In further consideration of the consistency of the proposed uses with the comprehensive plan, the hearing officer noted that "perhaps the most nebulous of the standards set forth in Section 1105.2 [of the Ordinance] is the requirement that the

[a]pplication be consistent with the Township Comprehensive Plan." (EMI's Brief at Exhibit A, Hearing Officer's Decision at 68). The hearing officer noted that the "overall tenor of the Plan" was assumed to be consistent with the Ordinance which contemplated such recreational uses by including such uses as special exceptions. *Id.*

The hearing officer stated that the applicant had the burden of demonstrating compliance with the requirements through the "absence of substantial evidence of violation" and was not required to "affirmatively prove the negative." (EMI's Brief at Exhibit A, Hearing Officer's Decision at 65). The hearing officer noted that the requirement that the proposed use was not adverse to the nature of the general neighborhood did not mean that the impact on an individual property had to be considered or whether there was any impact at all, but rather, the proper consideration was if there was an impact on the neighborhood as a whole or if the overall character of the neighborhood would be changed. Further, he noted that the "character of the neighborhood" to be considered was the neighborhood as it was developed consistent with the permitted uses under the Ordinance. (EMI's Brief at Exhibit A, Hearing Officer's Decision at 65). Thus, as we determine that the granting of EMI's special exception application was supported by substantial evidence of record and met the necessary requirements, we conclude that the trial court erred in reaching a contrary conclusion.

■ Finally, with regard to the issue regarding EMI's standing to file a special exception application for a commercial campground, EMI argues that it proposed a main access driveway and an emergency access driveway on land that it owns, but a small portion of each driveway would have to cross the trail owned by Greenways Association. EMI argues that the Board considered its title as landowner and determined that it had standing to file such an application and that, therefore, Greenways Association was not a necessary party.

EMI does admit that the Board conditioned its special exception approval on EMI's successful obtaining of legal access (by voluntary agreement or judicial determination) across the trail owned by Greenways Association before the issuance of building permits or permits for use and occupancy. EMI argues that the Board correctly found that the demonstration of a right to cross the Greenways Association's trail was not one of the objective requirements for campground special exception approval, but could be a condition precedent for the granting of a building permit. Finally, EMI argues that it is not seeking special exception approval to operate the campground on any portion of Greenways Association's property and that it is the undisputed owner of the property upon which it sought to operate such a campground.

The trial court rejected the conclusion that access over Greenways Association's property was a means of reaching the use rather than a part of the use because access over the trail would serve and benefit the campground and, therefore, it had to be considered a part of or an accessory to it. The trial court noted that EMI's excuses for not first obtaining legal access over Greenways Association's property could not be the bases for ignoring Greenways Association's legal rights, the provisions of the Ordinance and the applicable law. Thus, the trial court concluded that because EMI was required to have obtained approval for access over Greenways Association's property prior to seeking a special exception for the campground, the Board acted improperly in granting the

special exception and imposing a condition requiring such approval. It also noted that it rejected the approval because without the driveway, the campground would be landlocked, and approving a special exception application for a landlocked property violated the Ordinance.

 The general rule is that an indispensable party is one whose rights are so connected with the claims being litigated that he must be a party to the lawsuit to protect his rights and that no decree can be made without impairing those rights. *Columbia Gas Transmission Corporation v. Diamond Fuel Company,* 464 Pa. 377, 346 A.2d 788 (1975). If all parties indispensable to the litigation have not been joined, it is impossible for a court in equity to grant relief. *Posel v. Redevelopment Authority of Philadelphia,* 72 Pa. Cmwlth. 115, 456 A.2d 243 (1983). In *Mechanicsburg Area School District v. Kline,* 494 Pa. 476, 431 A.2d 953 (1981), our Supreme Court articulated some of the questions to be considered in the determination of indispensable parties as follows:

1. Do absent parties have a right or interest related to the claim?

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

*Mechanicsburg School District,* 494 Pa. at 481, 431 A.2d at 956.

The Board considered the issue of EMI's standing without joining Greenways Association and noted that:

[EMI] does not propose to conduct the campground use on the Greenways Association land, but rather only proposed to cross the Trail to gain access to the area where the use will be conducted. Absent some access over the Greenways Association land, the campground area is essentially landlocked. Potentially, such access could be obtained by (i) the consent of the Greenways Association (a license), (ii) an express easement, (iii) an easement by implication, (iv) an easement by necessity or (v) access by a proceeding under the Private Road Act. None of these remedies exist under the MPC, but must be obtained by an agreement with the Greenways Association, by a decree in equity or by a private condemnation. The Board has no jurisdiction to adjudicate such rights and remedies. Nor could a court or agency adjudicate such access in a meaningful way until the precise location of such access and the extent of the use thereof has been determined and until the use on the landlocked ground had been defined both, as to the location and extent by this Board, and, with respect to land development, the Planning Commission and the Board of Supervisors. Since [EMI] obviously could not proceed with construction and use until both the access rights and the Special Exception rights are obtained, the order of obtaining these discrete rights is of no moment. Before anything can happen on the ground, both must be present. Therefore, a condition of access approval attached to the Special Exception would fully protect the public interest. . . . . We cannot say as a matter of law that [EMI] does or does not have the right of full access. Neither is such a determination a condition precedent to the filing or grant of the application. It is only a collateral requirement (albeit a vital one). The application before us is for a Special Exception to construct and operate a commercial campground. It is not for the construction of a driveway. Such an application would not require a Special Exception and hence the interest in

the Greenways Association land is not a condition precedent to give standing for the filing of the relief sought absent a specific provision in the ordinance making such driveway use an express standard or criteria for such grant.

(EMI's Brief at 46, quoting Board's Decision at 22–23).

Although the Township correctly sets forth the general principle that only a landowner has standing to apply for relief, there is no evidence that EMI does not own the land on which it proposed to develop the motor sports park and campground. Indeed, the Township makes no such assertion. Instead, it asserts that because EMI included a portion of Greenways Association's property in its plan, Greenways Association must have been joined. EMI admitted and the Board acknowledged that some other legal action will have to take place in order for EMI to "cross" the portion of the trail owned by Greenways Association. However, such a requirement does not make Greenways Association an indispensable party.

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this 23rd day of July, 2009, the order of the Court of Common Pleas of Berks County is hereby reversed and the decision of the Union Township Zoning Hearing Board is reinstated.

### CONCURRING OPINION BY Judge SIMPSON.

I concur in the thoughtful majority opinion which reverses the order of the respected trial court and reinstates the decision of the Union Township Zoning Hearing Board (Board). I write separately to

clarify a point which caused some confusion both to the Board's hearing officer, Ronald Agulnick, Esq., and to the trial court. The point of confusion centers on the requirement in Section 1105.2(F) of the zoning ordinance that "The granting of the Special Exception shall be consistent with the Comprehensive Plan."

We construed similar language in *41 Valley Associates v. Board of Supervisors of London Grove Township*, 882 A.2d 5 (Pa.Cmwlth.2005). In that case, we considered whether a proposed agricultural security area (ASA) met the requirement of the Agricultural Area Security Law [1] that the use of land proposed for inclusion in an ASA "shall be compatible with local government unit comprehensive plans." [2] We concluded that this language

address[es] whether the proposed land is viable agricultural land from a legal viewpoint. Agricultural uses should be consistent with present zoning. *In addition, agricultural uses should be consistent with future zoning, as best estimated in the comprehensive plan.*

*41 Valley Assocs.*, 882 A.2d at 14 (emphasis added). Applying this interpretation of the statutory language, we looked at the map of future uses for the property. Ultimately, we concluded the governing body erred when it departed from analyzing discrete and objective criteria relating to the current and future zoning for the property and focused instead on the goals of the comprehensive plan. *Id.*

Here, the proposed motorsports park is currently in an Agricultural Preservation District, which permits recreation uses by special exception. Moreover, in the certified record, attached to the Union Township Comprehensive Plan Update, April

---

**1.** Act of June 30, 1981, P.L. 128, *as amended,* 3 P.S. §§ 901–915.

**2.** Section 7 of the Agricultural Area Security Law, 3 P.S. § 907(a)(2).

1994, is Figure 10, "Future Land Use Map–2010." The future use for the land in the area of the motorsports park is mapped as Agricultural Preservation.

In short, there is nothing in the Comprehensive Plan indicating a possible future change of zoning which would affect the area of the proposed motorsports park. Under these circumstances, no error is discerned in the hearing officer's determination that the motorsports park is a recreation use and that recreation uses are consistent with the Comprehensive Plan.