IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 1032 C.D. 2021 |
| | : | Submitted: August 19, 2022 |
| Bonnie Heuer, | : | |
| Appellant | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                    FILED: January 26, 2023

Bonnie Heuer (Heuer) appeals from an order entered in the Court of Common Pleas of Montgomery County (trial court) finding her guilty of harboring a dangerous dog in violation of Section 502-A of the Dog Law,[1] 3 P.S. § 459-502-A.  After careful review, we affirm.[2]

## I. BACKGROUND[3]

Sandra Rhoads (Rhoads) maintains livestock on her property.  Around 2:45 a.m. on June 5, 2019, Rhoads discovered two dogs in her pasture that did not belong to her, blood everywhere, and her goats trying to escape the pasture back into

---

[1] Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. §§ 459-101 – 459-1206.

[2] This matter appears before us on transfer from the Superior Court pursuant to Section 762(a)(2) of the Judicial Code, 42 Pa. C.S. § 762(a)(2). *See Commonwealth v. Hake*, 738 A.2d 46, 47 n.3 (Pa. Cmwlth. 1999) (noting that jurisdiction lies with the Commonwealth Court because the Dog Law "is not a penal statute under the Crimes Code (Title 18), but is a regulatory statute, administered and enforced by the Department of Agriculture (Title 7, Chapter 27 of the Pa. Code)").

[3] Unless otherwise stated, we adopt the factual background for this case from the trial court's opinion, which is supported by substantial evidence of record. *See* Trial Ct. Op., 5/3/21, at 1-4 (unpaginated).

her barn. The unknown dogs were later identified as Heuer's pets, Jax and Brewster.[4] When Rhoads realized that one of her alpacas (the Alpaca) was missing, she phoned the police. Upon their arrival, the police requested assistance from the Animal Control Officer (ACO) to remove the dogs from Rhoads' property. When the ACO arrived, Jax was laying by the side of Rhoads' fence, panting and tired, whereas Brewster continued to roam the pasture. Both dogs were eventually removed, but not before Brewster was tased after chasing the officers and Jax was restrained to the point of vomiting after trying to bite the ACO.

Rhoads identified remains of the Alpaca in Jax's vomit, *i.e.*, brown, fuzzy alpaca fiber and chunks of flesh. The missing Alpaca was found in the pasture, deceased, with "chunks of skin and flesh missing." Trial Ct. Op., 5/3/21, at 2. The ACO cited Heuer for harboring a dangerous dog.[5]

At the trial court's hearing, Rhoads and the ACO testified on behalf of the Commonwealth. Both Rhoads and the ACO admitted that they did not see either Jax or Brewster attack the goats or alpacas. Notes of Testimony (N.T.), 3/12/21, at 17, 26, 44. Additionally, the ACO stated that she could not be certain of the contents of Jax's vomit because it was "really, really dark" outside. *Id.* at 34-35. However, Rhoads testified that she observed that Jax's vomit had the Alpaca's flesh and "brown" and "fuzzy" fiber unique to alpacas. *Id*. at 13-14. Rhoads specifically recalled thinking, "Oh my goodness; look at those chunks of Lydia [the Alpaca] in there." *Id*. at 13. Rhoads and the ACO also testified that Jax resisted the officers' attempts to restrain him. N.T. at 13, 24-26, 34, 48.

---

[4] Jax is a brown and black dog, and Brewster is a light brown dog with a white head. *See* Trial Ct. Op., 5/3/21, at 1.

[5] Subsequently, Brewster was euthanized. This appeal concerns Jax.

Heuer did not testify, but her counsel challenged the weight and sufficiency of the Commonwealth's evidence. Nevertheless, after considering the evidence and crediting Rhoads and the ACO's testimonies, the trial court found Heuer guilty of harboring a dangerous dog. Heuer timely appealed and filed a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) statement. The trial court issued a responsive opinion.

## II. ISSUE

Heuer asserts that the Commonwealth introduced insufficient evidence to establish that she was guilty of harboring a dangerous dog. *See* Heuer's Br. at 8-12. Specifically, according to Heuer, insufficient evidence exists to identify Jax, rather than Brewster, as the perpetrator of the Alpaca's death. *Id*. The Commonwealth responds that Heuer's claim is without merit because the circumstantial evidence introduced was sufficient to establish Jax's identity. *See* Commonwealth's Br. at 5-20.[6]

## III. DISCUSSION[7]

Our standard of review to evaluate the sufficiency of evidence supporting a summary offense requires this Court to draw all reasonable inferences from the evidence in the light most favorable to the Commonwealth.

---

[6] The Commonwealth also contends that Heuer's arguments are waived because she failed to identify the element(s) upon which she asserts that the evidence was insufficient in her Pa. R.A.P. 1925(b) statement. *See* Commonwealth's Br. at 6 (citing *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013)). The Commonwealth asserts that Heuer's claim is further waived for lack of development. *See id*. at 11 (citing *Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008)). There is some merit to these assertions. Nevertheless, we decline to find waiver because these deficiencies do not preclude us from conducting meaningful appellate review. *See Union Twp. v. Ethan Michael, Inc.,* 979 A.2d 431, 436-37 (Pa. Cmwlth. 2009).

[7] On appeal, our scope of review for summary offense convictions is limited to determining whether constitutional rights were violated or whether the trial court committed an error of law or abused its discretion. *Commonwealth v. Geatti*, 35 A.3d 798, 799 (Pa. Cmwlth. 2011).

3

*Commonwealth v. Seyler*, 929 A.2d 262, 264 n.3 (Pa. Cmwlth. 2007) (internal citation omitted). Using this standard, we must determine whether the trier of fact "could have found that each element of the [offense] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Id*.

To secure a conviction pursuant to Section 459-502-A of the Dog Law, the Commonwealth must prove that: (1) the defendant is the owner/keeper of the dog; (2) the dog has committed one of four enumerated acts, one of which is severely injuring or killing a domestic animal off the owner's property; and (3) the dog has a history of attacking domestic animals or the propensity to attack domestic animals, without provocation, which can be shown by a "single incident." 3 P.S. § 459-502-A; *see also Seyler*, 929 A.2d at 266.

Heuer does not dispute that she is Jax's owner or that a serious injury and death occurred. Further, Heuer concedes that a single incident can establish the propensity to attack under the statute. Heuer's Br. at 8-12. Instead, Heuer challenges the sufficiency of evidence identifying Jax as the dog that killed the Alpaca. *Id*. In support, Heuer presents two arguments.

First, according to Heuer, it would have been "impossible" for Rhoads to identify the contents of Jax's vomit given her 50-to-75-yard distance from Jax and based on how dark it was outside. Heuer's Br. at 12. Although couched as a challenge to the sufficiency of the evidence, Heuer effectively challenges the credibility of Rhoads' testimony and asks this Court to reweigh the trial court's evidentiary findings. However, the trial court has "exclusive province" over witness credibility, and this Court may not reweigh facts or evidence on appeal. *Gaughen LLC v. Borough Council of Borough of Mechanicsburg*, 128 A.3d 355, 362, n.4 (Pa.

Cmwlth. 2015); *Spencer v. City of Reading Charter Bd*., 97 A.3d 834, 842 (Pa. Cmwlth. 2014). Moreover, sitting as the fact-finder, the trial court is "free to believe all, part, or none of the evidence when evaluating witness credibility." *Commonwealth v. Crabill*, 926 A.2d 488, 490-91 (Pa. Cmwlth. 2007).

Here, the trial court found that Jax attacked the Alpaca because the chunks of flesh and fibers in Jax's vomit matched that missing from the deceased Alpaca. Trial Ct. Op., 5/3/21, at 2; N.T. at 52. In so finding, the trial court specifically credited Rhoads's testimony as "very, very credible." N.T. at 52. When such evidence is viewed in the light most favorable to the Commonwealth, it is more than sufficient to establish that Jax attacked and killed the Alpaca. *Seyler*, 929 A.2d at 264 n.3 (internal citation omitted).

Second, Heuer argues that Jax's ingestion of the Alpaca's flesh does not necessarily mean that Jax, rather than Brewster, attacked the Alpaca. *See* Heuer's Br. at 11. We reject this argument. "Evidence of an identification need not be positive and certain to sustain a conviction;" rather an identification can be made solely from circumstantial evidence. *Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa. Super. 2018).[8] Further, because we defer to the fact-finder, it is immaterial if evidence would support a contrary finding. *See West Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (*Cochenour*).

Although no one witnessed Jax attack the Alpaca, evidence demonstrated that Jax was on Rhoads' property around the time of the incident, resisted officers who were trying to remove him from the property, was panting and

---

[8] Superior Court decisions "are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

tired when officers arrived, and had ingested remains of the deceased Alpaca, including chunks of flesh and fuzzy fibers, consistent with the chunks of flesh missing from the Alpaca. *See* Trial Ct. Op., 5/3/21, at 4. This circumstantial evidence permitted the trial court to infer that Jax had attacked and killed the Alpaca. *Smyser*, 195 A.3d at 915. Further, because there is substantial evidence to support this finding, additional evidence suggesting that Brewster may have been responsible is immaterial to our review. *Cochenour*, 251 A.3d at 475.

## IV. CONCLUSION

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the Commonwealth established that Jax severely injured or killed the Alpaca, a domestic animal located off Heuer's property. *See Seyler*, 929 A.2d at 264 n.3; Section 502-A(a)(1)(ii) of the Dog Law, 3 P.S. § 459-502-A(a)(1)(ii). Thus, we affirm.

LORI A. DUMAS, Judge

6

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
                                :
            v.                  :    No. 1032 C.D. 2021
                                :
Bonnie Heuer,                   :
                    Appellant   :

# **O R D E R**

AND NOW, this 26th day of January, 2023, the judgment of sentence entered by the Court of Common Pleas of Montgomery County, Criminal Division is AFFIRMED.

_____
LORI A. DUMAS, Judge